**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**FORT MYERS DIVISION**

REBECCA JO GETTY,
on behalf of MARY JO SHEA,

                Plaintiff,

-vs-                                  Case No.  2:10-cv-725-FtM-29SPC

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                Defendant.
_____

## REPORT AND RECOMMENDATION[1]

**TO THE UNITED STATES DISTRICT COURT**

      This matter comes before the Court on Plaintiff's, Rebecca Jo Getty, on behalf of Mary

Jo Shea, Complaint seeking review of the final decision of the Commissioner of Social Security

(Commissioner) denying Plaintiff's claim for disability insurance (Doc. # 1) filed on December

2, 2010. The Plaintiff filed her Memorandum in Support of the Complaint (Doc. # 13) on April

5, 2011. The Commissioner filed its Memorandum in Support of the Commissioner's Decision

(Doc. # 14) on June 6, 2011. Thus, the Motion is now ripe for review.

      The Undersigned has reviewed the record, including a transcript of the proceedings

before the Administrative Law Judge (ALJ), the exhibits filed and administrative record, and the

pleadings and memoranda submitted by the parties in this case.

---

[1] This Report and Recommendation addresses only the issues brought up for review by the District Court pursuant to
42 U.S.C. § 405(g).

## FACTS

### *Procedural History*

The Plaintiff filed a Title II application for a period of disability and disability insurance benefits on November 1, 2007, alleging an onset disability date of July 2, 2007. (Tr. 11). The claim was denied initially and upon reconsideration. (Tr. 56-60, 65-67). Thereafter, Plaintiff filed a written request for a hearing before an ALJ. (Tr. 28-55, 68). Prior to the hearing, on February 28, 2009, Plaintiff, Mary Jo Shea, died and her husband, Glen L. Shea, was substituted as the party in the matter. (Tr. 72). A vocational expert appeared and testified at the Hearing. (Tr. 11). On October 15, 2009, the ALJ issued an unfavorable decision, denying Plaintiff's claims for disability. (Tr. 11-20). Plaintiff appealed the denial to the Appeals Council (AC), and on October 14, 2010, the AC denied Plaintiff's request for review. (Tr. 1-3). The Plaintiff has exhausted all administrative remedies, and this case is now ripe for review under 42 U.S.C. § 405(g), 1383(c)(3).

### *Plaintiff's History*

Plaintiff, Mary Jo Shea, was 60 years old on the alleged disability onset date. (Tr. 98-99). Plaintiff had a high school education and previously worked as a deliverer and nurse assistant. (Tr. 52, 116, 119, 141). Plaintiff alleged that she was disabled primarily due to depression, fear, fatigue, headache, vision loss, an inability to concentrate, and back, neck, leg, and hand pain. (Tr. 115, 162).

### *Medical and Psychological History*

The medical evidence begins with a report from Dr. Alessi, Family Medicine of Naples, created on June 12, 2003. (Tr. 260). Dr. Alessi noted on that date that Plaintiff had some increasing issues with panic attacks, anxiety, and had hand numbness, and swelling. She also

-2-

noted elevated cholesterol and abnormal liver tests. Plaintiff's main complaint was her anxiety, which was not adequately controlled on Wellbutrin or Zoloft. (Tr. 260). Assessment was panic attacks with anxiety disorder, suboptimally controlled; history of hand numbness and swelling. Dr. Alessi referred Plaintiff to psychiatry for further evaluation. (Tr. 259).

Plaintiff was treated by Dr. Keown, who noted Plaintiff took Ambien and found it hard to sleep. She was depressed and anxious, and the physician diagnosed recurrent major depression, sleep disorder, and anxiety. (Tr. 191-94). In August, the physician noted Plaintiff's mood was still very down, but Dr. Keown noted that her anxiety was less on Klonopin. (Tr. 192). At a visit again in October 2004, Dr. Keown diagnosed Major Depression. (Tr. 191).

In November 2004, Plaintiff attended a physical with Dr. Brouillard, who diagnosed hyperglycemia, hyperlipidemia, anxiety, situational depression, and increased sedimentation rate. (Tr. 256-58).

In May 2005, Plaintiff saw counselor Mark Chidley who noted Plaintiff had been referred to him by Dr. Buchholz for counseling. The therapist said Plaintiff told him about fleeting suicidal ideas with some planning, and he noted Plaintiff's daughter had died of cancer in December 2004. He noted Plaintiff had had depression for most of her life. (Tr. 196-99).

In June 2005, Plaintiff attended a Psychiatric Evaluation with her treating physician, Dr. Keown. He noted Plaintiff had been more depressed since the death of her daughter in December 2004, from cancer. (Tr. 188-89). Plaintiff claimed her biggest medical problems included that she was overweight, possibly borderline diabetes, had frequent headaches, restless legs at night, and had neck surgery. Plaintiff said she felt tired all the time, and could fall asleep easily. Also, the evaluation noted that she lacked energy and motivation; she did not enjoy things much, and

she acknowledged suicidal feelings. After evaluation, Dr. Keown's diagnosis was Recurrent Major Depressive Disorder, and he increased her medication, Effexor, to 300mg. (Tr. 189-90).

In February 2006, Dr. Keown again diagnosed Plaintiff with Recurrent Major Depression. Dr. Keown stated Plaintiff was depressed following the loss of her daughter to breast cancer. Plaintiff also said she was concerned over her husband's health and worried about her daughter who was using drugs. (Tr. 188). Additionally, Dr. Keown diagnosed Plaintiff with osteopenia of the left hip in December 2006. (Tr. 201).

In January 2008, Plaintiff was admitted to Lee Memorial Hospital for a period of four (4) days due to depression and overdose. Her examining doctors stated Plaintiff had been feeling progressively depressed and took about twenty (20) Ativan and some Tylenol PM pills. The report noted Plaintiff had a previous transient ischemic attack. Diagnosis was acute depression, suicide attempt, and benzodiazepine overdose. (Tr. 281-82). The social worker who spoke with Plaintiff noted that Shea claimed to have stopped taking her medications because she could not afford the pills. (Tr. 309). Plaintiff also said she was depressed because she and her husband had been laid off their jobs, and her husband had terminal cancer. (Tr. 310). Shea said she had told her husband to stop giving her the medication she was taking for lipid control, and by mistake, he stopped giving her the Zoloft. (Tr. 309-11). Finally, Dr. Wetcher diagnosed Plaintiff with Major Depressive Disorder, recurrent with acute exacerbation due to accidentally stopping her medication, diverticulitis, and restless leg syndrome. He listed a Global Assessment of Functioning (GAF) of 50. (Tr. 310-11).

On May 13, 2008, Plaintiff attended a Consultative Examination at the request of Social Security. (Tr. 313). Plaintiff said she was short of breath after climbing the one flight of stairs. Plaintiff also stated she and her husband had lost their jobs, they had no money, and her mind

was not what it used to be – she had been depressed all her life and now it had gotten a lot worse. (Tr. 313). Plaintiff explained that she had histoplasmosis in both eyes a few years before, and that had left her with impaired vision (her left eye had a blind spot). She said she had stopped working in 2005, and had lost a daughter to cancer a year earlier. (Tr. 313). Plaintiff also said she had been seeing Dr. Alessi in Bonita but could no longer afford the visits. (Tr. 313). Subsequently, Dr. Bernard diagnosed Plaintiff with Major Depressive Disorder, alcohol abuse in short-term remission, and listed a GAF of 50. (Tr. 314).

Psychologist, Dr. M. Dow, completed a Mental Residual Functional Capacity (RFC) Form on May 13, 2008. (Tr. 315). He noted that Plaintiff was moderately limited in the ability to maintain attention and concentration for extended periods; moderately limited in the ability to complete a normal workday and work week without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; and that Plaintiff was moderately limited in the ability to accept instructions and respond appropriately to criticism from supervisors. (Tr. 315-17).

Dr. Dow also completed a Psychiatric Review Technique (PRT) Form. He noted that Plaintiff had 12.04 Affective Disorder (Major Depression recurrent in partial remission) and indicated that Plaintiff had mild limitation in restriction of activities of daily living, in maintaining social functioning, and in maintaining concentration, persistence, or pace, with one or two episodes of decompensation. (Tr. 319-32).

On May 19, 2008, a Physical RFC Form was completed by Charles Sims, SDM.  Sims found Plaintiff capable of lifting 20 pounds occasionally, 10 pounds frequently, and able to sit about 6 hours and stand/walk about 6 hours in an 8-hour workday. No other limitations were indicated. (Tr. 333-40).

On June 23, 2008, Plaintiff was seen at Lee Memorial with complaints of hearing loss and ear pain. (Tr. 344-45). In July 2008, Plaintiff began treatment with JBH Behavioral Health, having been referred by the Ruth Cooper Center. In her evaluation, the Plaintiff stated she had increased depression, increased anxiety, excessive worry, racing thoughts, and crying spells. She had poor energy and poor sense of self. Plaintiff had unresolved grief from the death of her daughter, and her younger daughter's drug use. The evaluation also noted that Plaintiff's husband had terminal prostate cancer, and that she had difficulty sleeping, had frequent crying spells, increased anxiety, feelings of hopelessness, and trouble concentrating. The therapist diagnosed recurrent major depression, moderate to severe, and anxiety disorder. He also listed Shea's GAF at a 45, which had reached a 60 over the past year. Other problems noted in the evaluation included depressed mood and anxiety. (Tr. 356-68). Plaintiff continued treating with JBH Behavioral until January 2009. (Tr. 347-68).

Plaintiff was also seen by Dr. Kenneth Berdick at the request of Social Security on November 4, 2008. Dr. Berdick noted after his Consultative Examination that Plaintiff did have a visual deficit in her left eye primarily because of histoplasmosis many years and an injury subsequent to laser surgery. (Tr. 386-87). However, he also indicated that the Plaintiff reported that many of these symptoms were relieved by over the counter medication. (Tr. 387).

Dr. Albert Ponterio, the state agency physician, completed a Physical RFC Form on November 24, 2008, and indicated that Plaintiff could lift 50 pounds occasionally, and 25 pounds frequently; she could stand and/or walk about 6 hours, and could sit about 6 hours in an 8-hour workday. He also noted that Plaintiff had limitations of near acuity, far acuity, depth perception, accommodation, color vision, and field of vision and was limited in those abilities. (Tr. 388-95). However, Dr. Ponterio indicated that Plaintiff could perform medium exertion overall.

## *Administrative Law Judge's Decision*

On October 15, 2009, after reviewing all of the evidence and testimony, Judge Mary Brennan issued a "Notice of Decision – Unfavorable.". (Tr. 8). The ALJ determined that Plaintiff was capable of performing her past work as a deliverer. (Tr. 20). Consequently, the ALJ found Plaintiff not disabled. The Judge's specific findings were as follows:

1.      The claimant meets the insured status requirements of the Social Security Act through June 30, 2012.

2.      The claimant did not engage in substantial gainful activity after July 2, 2007, the alleged onset date (20 C.F.R. § 404.1571 *et. seq.*).

3.      The claimant had the following severe impairment: depression (20 C.F.R. § 404.1520(c)).

4.      The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526).

5.      After careful consideration of the entire record, the undersigned finds that the claimant had the residual functional capacity to perform medium work as defined in 20 C.F.R. § 404.1567(c). The claimant was able to occasionally lift and/or carry fifty (50) pounds and frequently lift and/or carry twenty five (25) pounds. She was able to stand and/or walk for six (6) hours in an eight (8) hour workday and sit for six (6) hours in an eight (8) hour workday. Additionally, the claimant was able to perform simple routine, repetitive tasks on a sustained basis over a normal eight (8) hour workday. She was also able to make simple decisions and have occasional close interpersonal interactions with supervisors.

6.      The claimant was capable of performing past relevant work as a Deliverer; outside. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 C.F.R. § 404.1565).

7.      The claimant has not been under a disability, as defined in the Social Security Act, from July 2, 2007 through the date of this decision (20 C.F.R. § 404.1520(f)).

Plaintiff appealed the decision of the Administrative Law Judge to the Appeals Council, but the Appeals Council declined review by Order dated October 19, 2010. (Tr. 1-6). This left the ALJ's decision as the final decision of the Commissioner. Plaintiff then filed her Complaint in this Court pursuant to 42 U.S.C. § 1383(c).

## STANDARD OF REVIEW

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standards, and whether the findings are supported by substantial evidence. Hibbard v. Comm'r, 2007 WL 4365647 at *2 (M.D. Fla. Dec. 12, 2007) (citing Richardson v. Perales, 402 U.S. 389, 390, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971); McRoberts v. Bowen, 841 F.2d 1077, 1080 (11th Cir. 1988)). In evaluating whether a Plaintiff is disabled, the ALJ must follow the sequential inquiry described in the regulations[2] (20 C.F.R. §§ 404.1520(a), 404.920(a)). The

---

[2] The inquiry requires the ALJ to engage in a five-step analysis, which will either preclude or mandate a finding of disability. The steps are as follows:

   *Step 1.* Is the Plaintiff engaged in substantial gainful activity? If the Plaintiff is engaged in such activity, then he or she is not disabled. If not, then the ALJ must move on to the next question.

   *Step 2.* Does the Plaintiff suffer from a severe impairment? If not, then the Plaintiff is not disabled. If there is a severe impairment, the ALJ moves on to step three.

   *Step 3.* Does the Plaintiff's impairment meet or equal one of the listed impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. If so, then the Plaintiff is disabled. If not, the next question must be resolved.

   *Step 4.* Can the Plaintiff perform his or her former work? If the Plaintiff can perform his or her past relevant work, he or she is not disabled. If not, the ALJ must answer the last question.

   *Step 5.* Can he or she engage in other work of the sort found in the national economy? If so, then the Plaintiff is not disabled. If the Plaintiff cannot engage in other work, then he or she is disabled. See 20 C.F.R. §§ 404.1520(a)-(f), 416.920(a)-(f); see also Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004); Foote v. Chater, 67 F.3d 1553, 1557 (11th Cir. 1995) (per curiam).

Commissioner's findings of fact are conclusive if supported by substantial evidence (42 U.S.C. § 405(g)). "Substantial evidence is more than a scintilla – *i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion." Hibbard, 2007 WL 4365647 at *2 (citing Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing Walden v. Schweiker, 672 F.2d 835, 838B39 (11th Cir. 1982))); Richardson, 402 U.S. at 401.

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). The District Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. Foote, 67 F.3d at 1560; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992) (holding the court must scrutinize the entire record to determine reasonableness of factual findings).

The Court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]." Phillips, 357 F.3d at 1240 n.8; Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). If the Commissioner's decision is supported by substantial evidence, it should not be disturbed. Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).

## DISCUSSION

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted, or can be expected to last, for a continuous period of not less than twelve (12) months (42 U.S.C. §§ 416 (I), 423 (d)(1); 20 C.F.R. § 404.1505). The impairment

must be severe, making the plaintiff unable to do his or her previous work, or any other substantial gainful activity which exists in the national economy (42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505 - 404.1511). To determine whether the plaintiff is disabled, the ALJ is required to evaluate the claim according to the established five-step evaluation process.

The Plaintiff states that the ALJ committed several errors for which this case should be remanded. Specifically, Plaintiff alleges: (1) the ALJ's decision is not supported by substantial evidence, is not well reasoned, and conflicts with itself. The ALJ gave great weight to the opinion of Dr. Ponterio, Dr. Dow, Dr. O'Laughlin, and Dr. Levasseur, yet their opinions conflict with each other. Plaintiff further alleges: (2) the ALJ committed legal error when she stated that Plaintiff did not receive any medical treatment from January 2008 through July 2008, but did not consider the fact that Plaintiff could not afford treatment at that time. The Commissioner argues the ALJ properly evaluated the medical source opinions and the RFC was based upon substantial evidence. The Commissioner also states that the ALJ properly considered the Plaintiff's lack of treatment in her decision. Therefore, the Commissioner argues that the ALJ's ruling should be affirmed. The Court will proceed by examining these issues in turn.

1. *Whether the ALJ's Determination of Shea's RFC*
*is Supported by Substantial Evidence*

Plaintiff argues that substantial evidence proves the ALJ failed to properly assess her residual functional capacity (RFC). The fourth step in the evaluation process requires the ALJ to determine the plaintiff's RFC and based on that determination, decide whether the plaintiff is able to return to his/her previous work. McCruter v. Bowen, 791 F.2d 1544, 1547 (11th Cir. 1986). The determination of RFC is within the authority of the ALJ and along with the Plaintiff's age, education, and work experience, the RFC is considered in determining whether the Plaintiff

can work. Lewis, 125 F.3d at 1440 (citing 20 C.F.R. § 404.1520(f)). The RFC assessment is based upon all the relevant evidence of a Plaintiff's remaining ability to do work despite her impairments. Phillips, 357 F.3d at 1238; Lewis, 125 F.3d at 1440 (11th Cir. 1997) (citing 20 C.F.R. § 404.1545(a)). That is, the ALJ must determine if the Plaintiff is limited to a particular work level, using all relevant medical and other evidence in the case. Phillips, 357 F.3d at 1238 (citing 20 C.F.R. § 404.1567).

In this case, based upon the medical evidence and the testimony provided at the hearing, the ALJ determined that the Plaintiff was capable of performing a full range of work at a medium level of exertion.  In her decision, the ALJ states:

> After careful consideration of the entire record, the undersigned finds that the Plaintiff had the (RFC) to perform medium work as defined in 20 C.F.R. § 404.1567(c). The Plaintiff was able to occasionally lift and/or carry fifty (50) pounds and frequently lift and/or carry twenty five (25) pounds. She was able to stand and/or walk for six (6) hours in an eight (8) hour workday and sit for six (6) hours in an eight (8) hour workday. Additionally, the Plaintiff was able to perform simple routine, repetitive tasks on a sustained basis over a normal eight (8) hour workday. She was also able to make simple decisions and have occasional close interpersonal interactions with supervisors. (Tr. 17).

The ALJ continued:

> [i]n making this finding, the (ALJ) has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSRs 96-4p and 96-7p. The (ALJ) has also considered opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and SSRs 96-2p, 96-5p, 96-6p, and 06-3p. (Tr. 18).

In her decision, the ALJ reviewed the medical evidence, including the opinions of the Plaintiff's treating physician and the state consultative psychologists, Dr. Dow, Dr. Ponterio, and Dr. Levasseur. (Tr. 19-20). Based upon the ALJ's review of the medical evidence, the ALJ

-11-

supported her RFC determination with sufficient evidence from the record, including: (1) Dr. O'Laughlin's report that Plaintiff's score on the Folstein MMSE contradicted a cognitive dysfunction (Tr. 19, Exhibit 6F); (2) Plaintiff's GAF scores which were routinely at 55 which was moderate (Tr. 19, Exhibits 11F, 17F); (3) the opinion evidence of Dr. Dow, State Agency Psychologist, who completed a Psychiatric Review Technique Form indicating the Plaintiff only had mild limitations in restriction of activities of daily living, maintaining social function, maintaining concentration, persistence, or pace (Tr. 20); (4) State Agency Psychologist, Dr. Ponterio's reports which opined that the Plaintiff could perform medium exertion (Tr. 20); (5) Dr. Lavesseur, State Agency Psychologist, who also completed a Psychiatric Review Technique Form that indicated the Plaintiff's mental impairment is not severe (Tr. 20, Exhibit 13F); (6) the testimony of a Vocational Expert who found the claimant was able to perform her past relevant work as generally performed (Tr. 20); and (7) the medical evidence of record which indicated the Plaintiff did not receive any medical treatment from January 2008 through July 2008. (Tr. 19). Accordingly, the ALJ supported her RFC assessment with substantial evidence in the record. See Moore, 405 F.3d 1208, 1213 (11th Cir. 2005) (even if the record could support an alternative RFC, when based on substantial evidence, the ALJ's finding will not be disturbed).

Further, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability (20 C.F.R. § 404.1527 (e)). The ALJ is *not* required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the Commissioner (20 C.F.R. § 404.1527 (e)).

In assessing all the evidence of record, the ALJ determined some opinions to be unsupported by the record, but granted other parts of the assessment great weight. In her decision, the ALJ states:

> After careful consideration of the evidence, the (ALJ) finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's substituted party's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above (RFC) assessment. (Tr. 19).

Regarding the state consulting physicians' reports, the ALJ stated:

> Dr. Mike Dow, State Agency Psychologist, opined that the claimant was able to understand, remember, and carryout short and simple instructions. He indicated that she was able to get along with coworkers or peers without distracting them or exhibiting behavioral extremes. Dr. Dow further opined that the claimant was able to respond appropriately to changes in the work setting…The (ALJ) accords great weight to his opinion since [it is] supported by medical signs/findings and [is] consistent with other medical evidence of record. (Social Security Ruling 96-6p). (Tr. 19-20).

The ALJ also noted that, "Dr. Albert Ponterio, State Agency Physician, indicated the claimant could perform medium exertion." The ALJ considered Dr. Ponterio's assessment of the Plaintiff's visual limitations, but ultimately granted this physician great weight, "since it is consistent with the medical evidence of record. (Social Security Ruling 96-6p)." (Tr. 20). Lastly, after reviewing Dr. Levasseur's, State Agency Psychologist, Psychiatric Review Technique (PRT) Form, the ALJ accorded him great weight to the extent that his opinion was consistent with the medical evidence of record, "particularly [with] the opinion of Dr. Dow…[and] Dr. O'Laughlin. (Social Security Ruling 96-6p)." (Tr. 20).

The ALJ also refers to Dr. O'Laughlin's report in her decision, and states:

…the claimant's thought processes were rational, clear, and logical. (Exhibit 6F/3). Additionally, Mr. Shea's Third Party Function Report did not indicate that the claimant experienced limitations in concentration, understanding, or memory...[And that Plaintiff's] memory (recent, remote and recall) was intact. Her attention and concentration were also intact (Exhibit 11F/22). (Tr. 19-20).

In this case, the ALJ makes her RFC determination based upon all the relevant evidence of the Plaintiff's remaining ability to do work despite her impairments. Randolph v. Astrue, 2008 WL 4148518 *2 (11th Cir. Sept. 10, 2008) (citing Lewis, 125 F.3d at 1440). The ALJ granted great weight to medical opinions and other evidence which was consistent with the medical evidence of record.  Thus, it is not error for the ALJ to consider the record as a whole and subsequently rely on only the relevant pieces of the record in making her RFC determination. See Phillips v. Barnhart, 357 F.3d 1232, 1237-40 (11th Cir. 2004). Clearly, the ALJ considered the Plaintiff's entire medical history and the opinions of all the doctors in order to make her RFC determination, which was based upon substantial evidence. Thus, when the finding of an ALJ is supported by substantial evidence, it is in the province of the District Court to affirm her decision, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. Phillips, 357 F.3d at 1240.

a.   *The ALJ Resolved All Conflicts of Opinion Between Physicians and Substantial Evidence Supports the ALJ's Determination of RFC*

The Plaintiff also argues that the ALJ erred because she gave great weight to the opinion of Dr. Ponterio, to the opinion of Dr. Dow, Dr. O'Laughlin, and to the opinion of Dr. Levasseur, yet those opinions conflict with each other and the ALJ fails to resolve the conflict between their opinions. (Doc. # 14, p.6-15). Specifically, Plaintiff states that the ALJ's RFC findings with

respect to her mental limitations were not supported by substantial evidence, and also the ALJ's RFC determination did not include any visual limitations, which conflicted with her decision to give great weight to the opinion of the State Agency Consultant, Dr. Ponterio. Under 20 C.F.R. § 416.946(c), the regulations give responsibility to the ALJ in assessing a claimant's RFC, and thus entitles the ALJ to discount portions of the record after considering the record as a whole. 20 C.F.R. §§ 416.913(b), 416.927, and 416.945.

The formulation of the RFC is the ALJ's responsibility. See 20 C.F.R. § 404.1546(c); Walker v. Brown, 826 F.2d 996, 1000 n.1 (11th Cir. 1987). The ALJ is not bound in formulating the RFC by any specific medical opinion. 20 C.F.R. § 404.1527(d); Social Security Ruling (SSR) 96-5p; SSR 96-8p. The ALJ is only required to consider all medically determinable impairments in assessing the RFC. See 20 C.F.R. § 404.1545. Based on these standards, the Court finds that Plaintiff's argument stating the ALJ didn't support her opinion with substantial evidence is not well founded.

### *Mental Limitations*

In her opinion, with respect to the Plaintiff's mental limitations, the ALJ states that "[t]he claimant does not have the gravity of symptoms nor medical documentation in order to establish an impairment of listing level severity." (Tr. 16). The ALJ further states, "[i]n activities of daily living, the claimant has mild restriction." (Tr. 16). The Court finds that no inconsistency exists between the ALJ's decision to give great weight to Dr. Dow and Dr. Levasseur's opinions because both doctors found Plaintiff to have only mild limitations in all three functional categories. (Tr. 329, 380). Additionally, the ALJ specifically accounts for any discrepancy in the medical opinions by affording great weight only to the extent that it is consistent with the

medical evidence of record, particularly the opinion of Dr. Dow. In the ALJ's opinion she

addresses Dr. Dow's "Summary Conclusions" section of the MRFC form, and states:

> The claimant was able to understand, remember, and carry out short
> and simple instructions. [Dr. Dow] indicated that she was able to
> get along with coworkers or peers without distracting them or
> exhibiting behavioral extremes…[and further opined that the
> claimant was able to respond appropriately to changes in the work
> setting.] (Tr. 19).

In her decision, the ALJ also commented on Dr. Levasseur's opinion which indicated the

Plaintiff only had mild limitations in activities of daily living; mild difficulties in maintaining

social functioning; and mild difficulties in maintaining concentration, persistence, or pace. (Tr.

380). The ALJ noted that:

> Dr. James Levasseur, State Agency Psychologist, completed a
> Psychiatric Review Technique Form indicating that the claimant's
> mental impairment is not severe (Exhibit 13F). [The ALJ then]
> accord[ed] great weight to his opinion to the extent that it is
> consistent with the medical evidence of record, particularly the
> opinion of Dr. Dow, and the findings of Dr. O'Laughlin. (Social
> Security Ruling 96-6p.). (Tr. 20).

Based on the ALJ's assessment of Dr. Levasseur's opinion, it is clear that there is

substantial evidence to support her findings. Furthermore, there is no inconsistency between the

ALJ's decision to give great weight to both Dr. Dow and Dr. Levasseur, as both found the

Plaintiff to have only mild limitations in all three functional categories as listed above. (Tr. 329,

380). Dr. Dow's overall finding was that Plaintiff was capable of most mental functioning. (Tr.

317). Dr. Dow also concluded in the Section III RFC assessment that Plaintiff could concentrate,

attend, and persist without noting any functional limitations, and she was not significantly

limited in her ability to understand, remember, and carry out simple instructions in the

"Summary Conclusions" section of the form. (Tr. 19, 315-17). Similarly, Dr. Levasseur found

that Plaintiff had no severe mental impairment. (Tr. 20). This finding is consistent with the

regulations, which state that, if a claimant has no episodes of decompensation and either no or

only mild limitations in the other functional areas, the Commissioner will generally conclude that

the mental impairment is non-severe (as is the case here). (Tr. 17, 370, 380). See 20 C.F.R. §

404.1520a(d)(1).

Plaintiff further argues that both Dr. Dow and Dr. Levasseur's opinions are inconsistent

with the ALJ giving great weight to Dr. O'Laughlin, which suggests Plaintiff had moderate to

serious symptoms based on Plaintiff's GAF scores. However, Dr. O'Laughlin diagnosed Plaintiff

with major depressive disorder, recurrent; alcohol abuse in short term remission; a present GAF

score of 50; and highest GAF (in 2008) of 55.[3]  In her decision, the ALJ notes that:

> [t]he Consultative Psychological Evaluation by Dr. O'Laughlin
> also indicated that the claimant was pleasant and cooperative. She
> reported that the claimant's thought processes were rational, clear,
> and logical…[and] stated that claimant's 27/30 score on the
> Folstein MMSE contradicted a cognitive dysfunction. (Exhibit 6F).
> Furthermore, the claimant's GAF scores were routinely at 55
> which was only moderate. (Tr. 19; Exhibits 11F and 17F).

Dr. O'Laughlin also reported that:

> [The Plaintiff's] mood was stable and appropriate throughout the
> interview and sensorium was clear. She indicated that the
> claimant's judgment and insight were probably about average. Dr.
> O'Laughlin estimated that her intellectual level was average, based
> solely on observation…Dr. O'Laughlin diagnosed the claimant
> with major depressive disorder, recurrent, alcohol abuse in short
> term remission, and a present GAF of 50. (Tr. 14-15; Exhibit 6F).

Based upon the representations of Dr. O'Laughlin, the ALJ found that the Plaintiff was capable

of performing light work as defined by 20 C.F.R. § 404.1567(b), but she is limited to simple

---

[3] A GAF score measures an individual's overall level of functioning, and a score of 41-50 indicates serious symptoms or difficulty in social, occupational, or school functioning which a score of 51-60 indicates moderate symptoms. See American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders, 32-34 (4th ed. 2000, Text Rev.) (DSM-IV-TR).

routine, repetitive tasks over an eight (8) hour work day. (Tr. 15). The ALJ granted the opinion of Dr. O'Laughlin great weight and based upon her reports, the ALJ noted that the claimant only had mild difficulties in social functioning, indicating that Shea spent time on the phone and computer. (Tr. 16; Exhibit 5E/5). Accordingly, the ALJ found that the claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (Tr. 16).

As stated above, the ALJ noted that Dr. Dow indicated on the PRT Form that Plaintiff had mild limitations, not moderate limitations, in concentration, persistence, and pace. And likewise the ALJ found only mild limitations in her PRT assessment. (Tr. 16-17). Therefore, there was no inconsistency in the ALJ assigning great weight to the opinions of Dr. Dow, Dr. Levasseur, and Dr. O'Laughlin, all of which were supported by substantial evidence. Thus, the Court finds that the ALJ's determination of Plaintiff's RFC of mental function is based on substantial evidence when she found that the evidence does not indicate Plaintiff's mental condition caused additional limitations.

### *Physical limitations*

Plaintiff argues that the ALJ's RFC finding did not include any visual limitations and her decision to give great weight to the opinion of Dr. Ponterio, the state agency consultant conflicted with her determination of Plaintiff's ability to perform medium exertional work. In her opinion, with respect to the Plaintiff's physical limitations, the ALJ found that the claimant had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c). (Tr. 17). In her decision, the ALJ noted:

> The claimant was able to occasionally lift and/or carry 50 pounds and frequently lift and/or carry 25 pounds. She was able to stand and/or walk for 6 hours in an 8 hour workday and sit for 6 hours in an 8 hour workday. Additionally, the claimant was able to perform simple routine, repetitive tasks on a sustained basis over a normal 8 hour workday. She was also able to make simple decisions and have occasional close interpersonal interactions with supervisors. (Tr. 17).

In regards to the opinion of Dr. Ponterio, the ALJ stated:

> Dr. Albert Ponterio, State Agency Physician, indicated that the claimant could perform medium exertion. He opined that the claimant had visual limitations in regard to her left eye (Exhibit 16F). The (ALJ) accords great weight to the opinion of Dr. Ponterio indicating that claimant could perform medium work since it is consistent with the medical evidence of record (Social Security Ruling 96-6p). (Tr. 20).

The opinions of state agency consultants may be entitled to great weight if they are supported by evidence. See 20 C.F.R. § 404.1527(f)(2); SSR 96-6p. However the ALJ is not bound by any findings made by a state agency consultant. See 20 C.F.R. § 404.1527(f)(2)(i). Also, as stated above, it is widely accepted that an ALJ may consider the record as a whole and subsequently rely on only the relevant pieces of the record in making her RFC determination. See Barnhart, 357 F.3d at 1237-40. Clearly, the ALJ relied on the relevant portions of Dr. Ponterio's opinion where he states the Claimant could perform medium work, and rejected his opinion regarding Plaintiff's alleged visual impairment as it was not supported by substantial objective medical evidence of record which would support Shea's diagnosis and treatment of a visual impairment. Thus, the ALJ's finding that Plaintiff did not have a severe visual impairment which "significantly limits [a claimant's] physical or mental ability to do basic work activities" is well founded and based on a lack of substantial evidence. See 20 C.F.R. § 404.1520(c).

-19-

In the ALJ's review of the Plaintiff's physical impairments, she noted "the claimant's alleged problems with back and neck pain, headaches, and leg and hand pain." (Tr. 13).  The ALJ also noted that while the Plaintiff claimed to have the above listed impairments, the medical evidence indicated she was not seeking treatment for those impairments.  (Tr. 12-14; Exhibits 1F-17F). Therefore, the ALJ concluded the impairments were not-severe. (Tr. 12-14)

Furthermore, in terms of the Claimant's alleged impairments, Mr. Glen Shea, claimant's husband and substituted party, testified at the hearing, but was unable to provide specific information. (Tr. 19). According to the Third Party Function Report completed by Mr. Shea, and the ALJ's decision "the claimant had no problems taking care of her personal needs and she was able to prepare simple meals," showing that Plaintiff has only mild restriction in activities of daily living. (Tr. 16; Exhibit 3E/2-3).

In assessing the evidence of record, the ALJ found that the Claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however Mr. Shea's substituted third party statements were not credible to the extent that they are inconsistent with the RFC assessment. (Tr. 19). Therefore, the ALJ looked to other medical opinion evidence in determining Plaintiff's RFC. Thus, the Court finds that the ALJ's decision is well grounded and based on substantial evidence. Therefore, it is recommended the decision of the Commissioner should be affirmed.

### 2.   *Whether the ALJ Erred in Considering Plaintiff's Lack of Treatment*

Plaintiff argues that the ALJ committed legal error when she stated Plaintiff did not receive any medical treatment from January 2008 through July 2008, but did not consider the fact that Claimant could not afford treatment at the time. Plaintiff cites to Dawkins v. Bowen, 848 F.2d 1211, 1213 (11th Cir. 2008) which states that the burden of proving unjustified

noncompliance is on the Commissioner. Furthermore, she notes that the ALJ must consider a claimant's allegation that he has not sought treatment because of lack of finances. <u>Dover v. Bowen</u>, 784 F.2d 335, 337 (8th Cir. 1986).

In this case, the ALJ did not find the Plaintiff disabled due to her failure to seek treatment, but found after reviewing *all* evidence of record that Plaintiff did not meet the statutory definition of disability (20 C.F.R. § 404.1527 (e)). The ALJ merely considered Claimant's treatment history together with the other evidence in deciding her claim, as permitted by the regulations and Eleventh Circuit case law. (Tr. 13-16, 18-20). <u>See</u> 20 C.F.R. §§ 404.1527(d)(4), 40 4.1529(c)(3)(iv); <u>Ellison v. Barnhart</u>, 355 F.3d 1272, 1275 (11th Cir. 2003). When failure to receive treatment is not the sole basis for the ALJ's decision of denial of benefits, the ALJ has not committed reversible error if she considers treatment history without considering Claimant's ability to afford treatment. <u>Ellison</u>, 355 F.3d at 1275.

Clearly, in this case the ALJ did not commit error as her decision was supported by substantial evidence based on the medical evidence of record in addition to the physicians' opinions. Although the ALJ considered the fact that Plaintiff did not receive treatment from January 2008 through July 2008 as part of her decision, the ALJ was still able to make a determination based on substantial evidence found in Plaintiff's medical records *in toto*. Thus, the ALJ did not find the Claimant disabled solely due to her failure to seek treatment as Plaintiff has suggested. Therefore, it is recommended the decision of the Commissioner should be affirmed. Accordingly, it is now

**RESPECTFULLY RECOMMENDED:**

The decision of the Commissioner should be **AFFIRMED**.

-21-

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its filing shall bar an aggrieved party from attacking the factual findings on appeal.

**RESPECTFULLY RECOMMENDED** at Fort Myers, Florida, this   21st   day of September, 2011.

SHERI POLSTER CHAPPELL
UNITED STATES MAGISTRATE JUDGE

Copies: All Parties of Record